J. S58007/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RANDY TAFT, | : | No. 169 MDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, January 29, 2016,
in the Court of Common Pleas of Tioga County
Criminal Division at No. CP-59-CR-0000152-1987

BEFORE:  GANTMAN, P.J., SHOGAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 18, 2018**

This case comes to us on remand from the Supreme Court of Pennsylvania for further consideration.  ***See Commonwealth v. Taft***, 2018 WL 1410227 (Pa. 2018) (***per curiam***).  Upon careful review, we reverse the Court of Common Pleas of Tioga County's January 29, 2016 order denying appellant's petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, and remand to the PCRA court for further proceedings consistent with this memorandum.

Appellant has filed numerous PCRA petitions, all of which were dismissed.  Appellant filed the current petition on January 26, 2015, alleging previously unknown exculpatory facts in the form of a November 26, 2014 letter from the United States Department of Justice ("DOJ") concerning improper practices by certain FBI laboratory examiners, including

FBI Examiner Michael Malone who performed laboratory work in appellant's case. The November 26, 2014 letter informed appellant that Mr. Malone's work and testimony has been criticized by some courts and independent scientists hired by the FBI to review his work.

In a second letter to Tioga County District Attorney Krista Deats, dated June 25, 2015, the DOJ advised that it had reviewed laboratory reports and testimony by FBI laboratory examiners in cases involving microscopic hair comparison analysis. The DOJ determined that a report regarding microscopic hair comparison analysis containing erroneous statements was used in appellant's case. The DOJ found that the microscopic hair laboratory comparison analysis report presented in this case included statements that "exceeded the limits of science," including that Mr. Malone stated or implied that the evidentiary hair could be associated with a specific individual to the exclusion of all others or provided a likelihood that the questioned hair originated from a particular source. In his September 4, 1987 report, Mr. Malone examined a pubic hair from the crime scene and determined that, "This hair exhibits the same individual microscopic characteristics as the pubic hairs of [appellant] and, accordingly, is consistent with having originated from [appellant]." (Amended petition for post-conviction relief, 8/24/15, Exhibit F at 7; docket #16.)

Following receipt of the June 25, 2015 letter, appellant filed an amended PCRA petition on August 24, 2015. Appellant's petition was

dismissed on January 29, 2016, following Pa.R.Crim.P. 907 notice. Apparently, appellant was not provided with a copy of the order, and no appeal was filed; however, on January 6, 2017, appellant's right to appeal the January 29 order was reinstated *nunc pro tunc*, and this appeal followed. Appellant was not ordered to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); however, on May 12, 2017, the PCRA court filed a supplemental opinion.

On October 13, 2017, we entered our initial decision in this case, in which we affirmed the PCRA court's denial of appellant's PCRA petition. Appellant filed a petition for allowance of appeal with our supreme court on November 2, 2017. On April 11, 2018, our supreme court vacated our initial decision and remanded to this court to reconsider our holding in light of our supreme court's holding in *Commonwealth v. Chmiel*, 173 A.3d 617 (Pa. 2017).[1]

In *Chmiel*, the defendant was convicted of murder and sentenced to death. *Id.* at 619. During trial, George Surma, a forensic scientist with the Pennsylvania State Police, testified that he had analyzed six hairs retrieved from a sweater mask recovered from the crime scene. *Id.* at 620. Mr. Surma testified that two of the hairs "found on the sweater sleeve mask were 'microscopically similar' to hair samples obtained from [the defendant,]

---

[1] *Chmiel* was announced on November 22, 2017.

but not to those obtained from [the defendant's] brother, Martin, or to the victims." **Id.** (citations omitted).

On April 20, 2015, the FBI issued a press release in which the agency released the findings of an investigation that "scrutinized the testimony of FBI analysts concerning microscopic hair comparison analysis prior to 2000, the point at which mitochondrial DNA testing became routine in the FBI." **Id.** at 621.

> The FBI concluded that its examiners' testimony in at least 90% of cases contained erroneous statements. The FBI's findings "confirm[ed] that the FBI microscopic hair analysts committed widespread, systematic error, grossly exaggerating the significance of their data under oath with the consequence of unfairly bolstering the prosecution's case. . . ."
>
> The FBI press release quoted Peter Neufeld, co-director of the Innocence Project, as saying that the results of the FBI's review demonstrated an "epic miscarriage of justice." The press release also quoted Norman L. Reimer, Executive Director of [the National Association of Criminal Defense Lawyers], as stating that, although "[i]t will be many months before we can know how many people were wrongly convicted based on this flawed evidence," he was certain that there were "many whose liberty was deprived and lives destroyed by prosecutorial reliance on this flawed, albeit highly persuasive evidence. Mr. Reimer called upon lawmakers to prevent similar systemic failures, and upon the courts to "give those who were impacted by this evidence a second look at their convictions." . . . .
>
> . . . .
>
> Over the course of 25 years, the FBI conducted multiple two-week training courses that reached

several hundred state and local hair examiners throughout the country and that incorporated some of the same scientifically flawed language that the FBI's examiners had used in some lab reports and often in trial testimony. In response to the FBI/[Department of Justice ("DOJ")] review, the Texas Forensic Scientific Commission has already begun a review of cases handled by analysts at state and local crime labs. Similar audits are needed in most states.

*Id.* at 621-622 (citations omitted).

The ***Chmiel*** court held as follows:

[T]he fact that the FBI was internally reviewing the accuracy of microscopic hair analysis or testimony is not the newly discovered fact upon which Chmiel's claim is based. Rather, the newly discovered facts are the FBI's admissions, as the proponent of microscopic hair analysis, that its examiners gave flawed and scientifically unsupportable testimony, and spread its flawed methodology to state and local analysts. Although the existence of the FBI's internal investigation was known, the press release marked the first public admission by the FBI regarding its conclusions about testimony premised upon microscopic hair analysis and the dissemination of such scientifically flawed language to state and local analysts.

. . . .

Although the [National Academy of Sciences] Report compiled preexisting public data and studies and questioned the science underlying microscopic hair analysis, it unquestionably was not an admission by the authority behind the science that the science and related testimony were, in fact, flawed. In contrast, the FBI press release is not old wine in a new bottle; it was a public admission by the FBI, as the nation's premier law enforcement agency and the proponent of this forensic technique, of widespread error. It is this concession, not the suspected unreliability of the

> forensic evidence as developed through scientific advancements, that triggers the sixty-day window within which Chmiel was required to file his claim. This concession did not exist in the public domain prior to April 20, 2015.

*Id.* at 626.

In the instant appeal, given a broad reading of ***Chmiel***, we find that the FBI's concession of widespread error in microscopic hair analysis triggered appellant's 60-day window for appellant to timely submit a claim under the PCRA. Accordingly, we reverse the PCRA court's denial of appellant's petition and remand for further proceedings consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/18/2018